UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILBERT EDMOND,

                  Petitioner,                  Case No. 1:21-cv-833

v.                                      Honorable Robert J. Jonker

RANDEE REWERTS,

                  Respondent.

_____/

## <u>OPINION</u>

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Wilbert Edmond is incarcerated with the Michigan Department of Corrections at the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. On October 16, 2018, following a seven-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316, being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b. On November 28, 2018, the court sentenced Petitioner to life imprisonment without parole for first-degree murder, to be served consecutively to 2 years' imprisonment for felony firearm. In addition, the court sentenced Petitioner to 48 to 80 months' imprisonment for the felon-in-possession conviction.[1]

_____

[1] Petitioner was on parole for unarmed robbery at the time he committed the murder. It appears that the unarmed robbery sentence is active and that Petitioner's consecutive string for murder and felony-firearm will not commence until after that sentence is discharged. Moreover, after Petitioner's first-degree murder trial, he was also prosecuted for a separate and preceding open

On September 8, 2021, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I.     The Trial Court abused its discretion in admitting Evidence that Westley Cheeks, who was present at the party where Thomas George was murdered, was also murdered. The Evidence denied Defendant-Appellant a fundamentally fair Trial.

II.    The prosecutor committed Misconduct and violated Defendant's right to a fair trial in deliberately solic[i]ting and elic[i]ting irrelevant and unfairly prejudicial testimony and making improper civic duty argument . . . And Defense Counsel was ineffective in failing to object to the prosecutor's closing argument referencing this irrelevant testimony.

III.   Defendant's conviction must be vacated due to Insufficiency of the Evidence that he was the person who killed Thomas George.

(Pet., ECF No. 1, PageID.3 (capitalization and ellipses in original retained).)[2] Respondent asserts that Petitioner's grounds for relief are meritless.[3] (ECF No. 17.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief

---

murder charge. He entered a plea of guilty to a charge of second-degree murder and the court sentenced Petitioner to 15 to 30 years' imprisonment for that murder.

[2] Petitioner initially filed his § 2254 petition in the United States District Court for the Eastern District of Michigan. On September 23, 2022, that court transferred the petition to this Court for further proceedings. (ECF No. 2.)

[3] Respondent also contends that Petitioner's second ground for relief is partially procedurally defaulted. (ECF No. 17, PageID.41.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

and will, therefore, deny his petition for writ of habeas corpus. The Court will also deny Petitioner's requests for the appointment of counsel. (ECF Nos. 19, 23.)

<u>Discussion</u>

## I.     Requests to Appoint Counsel

Petitioner has requested that the Court appoint counsel to represent him in these habeas proceedings. (ECF Nos. 19, 23.) He suggests that counsel is required because he "does not have the legal [capacity] or inte[]llect to successfully defend himself legally in this matter." (ECF No. 19, PageID.673.) Indigent petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. *See, e.g.*, Rule 8(c), Rules Governing Section 2254 Cases. The Court has considered the complexity of the issues and the procedural posture of the case. At this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position. Accordingly, Petitioner's requests for counsel (ECF Nos. 19, 23) will be denied.

## II.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> On February 3, 2017, a group of people including defendant, his brother-in-law, Greg Williams, Jaqueline Boose, Allison Browne, and Westely Cheeks, Browne's boyfriend, attended a party at Lindsay Patton's house to celebrate the birth of the daughter of the victim, Thomas George. Browne testified at trial that during the party defendant became upset because the victim acted disrespectful toward defendant causing him to become angry. Defendant left the party with Williams. About 30 minutes later defendant and Williams returned. Browne and Patton each testified that defendant entered the home with a semiautomatic handgun. Only defendant was armed. Defendant and Williams restrained the victim and Patton saw defendant shoot approximately three to five rounds at the victim. Browne testified that she heard the first gunshot as she ran out the back door. Patton testified that he

also ran out of the home. Defendant and Williams fled the scene. When Patton returned, he found the victim unresponsive with multiple gunshot wounds. He called 911. The hospital pronounced the victim dead and an autopsy revealed that he died of multiple gunshot wounds.

Both Patton and Browne were not forthcoming with information during their initial police interviews. However, each later identified defendant as the shooter. Browne testified that Cheeks told her that defendant shot the victim. Browne also testified that defendant told her a few months after the victim's death that he shot the victim in self-defense. Cheeks did not testify because he was murdered by defendant's nephew about two months after the victim's murder. Cheeks's murder prompted Browne to provide the police additional information regarding the victim's shooting. During trial, Browne testified that Cheeks was murdered in Boose's house while she and Boose were present. Browne testified that she had not initially been forthcoming with police regarding the investigation of the victim's death because she feared for her life and that she had been threatened.

*People v. Edmond*, No. 346834, 2020 WL 2601571, at *1 (Mich. Ct. App. May 21, 2020).

Jury selection for Petitioner's trial began on October 1, 2018. (Trial Tr. I, ECF No. 18-5.) Thereafter, over the course of five days, the jury heard testimony from numerous witnesses, including the individuals who were present at the party, law enforcement officials, a deputy medical examiner/forensic pathologist, employees of the Michigan State Police forensics laboratory, Petitioner's sister, and the mother of two of Petitioner's children. After one morning of deliberation, the jury reached a guilty verdict on October 16, 2018. (Trial Tr. VII, ECF No. 18-11, PageID.429.) Petitioner appeared before the trial court for sentencing on November 28, 2018. (ECF No. 18-12.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the same three issues raised in his habeas petition. (ECF No. 18-13, PageID.504–536.) On May 21, 2020, the court of appeals affirmed Petitioner's convictions and sentences. *Edmond*, 2020 WL 2601571, at *1. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same issues set forth

above. (ECF No. 18-14, PageID.596–600.) The Michigan Supreme Court denied leave to appeal on March 2, 2021. (*Id.*, PageID.594.) This § 2254 petition followed.

## III.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.    Discussion

### A.    Ground I—Admission of Evidence of Cheeks's Murder

In habeas ground I, Petitioner contends that the trial court abused its discretion by admitting evidence that Westely Cheeks was also murdered.[4] (ECF No. 1, PageID.3.) Petitioner argues that the admission of the evidence denied him a fundamentally fair trial. (*Id.*)

---

[4] Petitioner argues that the evidence admitted included the following facts: "1) [Cheeks] was murdered and 2) the murder occurred in Jacki Boose's kitchen 3) Allison, Jacki, and Defendant were present." (Pet'r's Appeal Br., ECF No. 18-13, PageID.517.) The Court has scoured the transcript for testimony admitted regarding those three facts. The only testimony the Court has found is: (A) the testimony of Jacki Boose stating that Cheeks was murdered in Boose's home two months after Petitioner killed Thomas George (Trial Tr. II, ECF No. 18-7, PageID.262); and

The court of appeals rejected Petitioner's argument, concluding that the evidence was properly admitted under the Michigan Rules of Evidence. *See Edmond*, 2020 WL 2601571, at *1–2. The court specifically concluded that the evidence regarding Cheeks's murder was relevant:

> Cheeks's murder had relevance to why Cheeks could not testify at trial. Further, evidence regarding Cheeks's murder had relevance regarding Browne's credibility as a witness. The record reflects that she failed to be entirely truthful when she first provided a statement to the police. Her lack of candor arose out of fear following the victim's and Cheeks's murders. Cheeks's murder caused Browne to initially withhold information that she later provided to the police. Later, when interviewed again by the police, Browne told police that defendant admitted to shooting the victim. Therefore, the evidence was relevant to assist in the evaluation of Browne's credibility as a witness. Defendant's contention that Browne's testimony—she feared for her life and had been threatened—was irrelevant lacks merit. Such testimony had relevance to assist the jury in evaluating her credibility as a witness.

*Id*. at *2.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). To the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

---

(B) the testimony of Allison Browne stating that Cheeks was murdered in Jacki Boose's kitchen on April 1, 2017, and that she and Jacki Boose were there (Trial Tr. III, ECF No. 18-8, PageID.304.) There was no testimony admitted that disclosed that Petitioner was present when Cheeks was murdered. That fact is apparent from the transcript, but it was discussed outside the presence of the jury. (Trial Tr. III, ECF No. 18-8, PageID.288–289.) Indeed, it was apparently Petitioner's relative Dequaries Jackson who was prosecuted and convicted of killing Cheeks. (*Id*.)

As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (second alteration in original) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue"). Petitioner has not met this high standard. Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the relevant evidence at issue. *See Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (observing that "[t]he Supreme

Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process"). Therefore, he is not entitled to relief on habeas ground I.

**B.      Ground II—Prosecutorial Misconduct and Related Ineffective Assistance of Counsel**

Petitioner next argues that he was denied due process and a fair trial because the prosecutor committed misconduct. Petitioner contends further that counsel was ineffective for failing to object to the prosecutor's closing argument "referencing this irrelevant testimony." (*Id.*) The Court will first consider Petitioner's prosecutorial misconduct claim and then consider his related ineffective assistance of counsel claim.

**1.      Prosecutorial Misconduct**

For claims of prosecutorial misconduct, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Supreme Court has emphasized a series of factors to be evaluated when making this determination: (1) whether the comments were isolated or pervasive; (2) whether the comments were deliberately or accidentally put before the jury; (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant, (4) whether the prosecutor manipulated or misstated the evidence; (5) the strength of the overall proof establishing guilt; (6) whether the remarks were objected to by counsel; and (7) whether a curative instruction was given by the court. *See id.* at 182–83; *United States v. Young*, 470 U.S. 1, 12–13 (1985); *Donnelly*, 416 U.S. at 646–47. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

10

Petitioner presents two distinct prosecutorial misconduct claims. First, Petitioner argues that the prosecutor's extended questioning regarding the circumstances of Cheeks's death was a purposeful attempt to elicit irrelevant evidence. (Pet'r's Appeal Br., ECF No. 18-13, PageID.525–527.) Second, the prosecutor, when referencing a witness's fear that her testimony might jeopardize her safety, engaged in an impermissible "civic duty" argument. (*Id*., PageID.527–529.) The specific example offered by Petitioner reads as follows:

> "[T]his was her best friend's love, and she's lost a good friend over this case. Again, any special reason for her to lie or to tell the truth? Why would she make this up and lie about the identity of the Defendant who did this, ***a person that she believes that could kill her or have her killed and who is scared to this day about testifying, being labeled a snitch, having her life put in danger.*** That doesn't make any sense. No one is going to put themselves through that. It's against their own preservation.
>
> Why would she lie? Why would she lie and make this up to live in constant fear of being murdered? She had to sell her home, move out of the Lansing. She had to uproot her life because of this. And she's scared and she still is scared."

(*Id*., PageID.528 (alteration and emphasis in original).)

The court of appeals rejected Petitioner's claims of prosecutorial misconduct, stating:

> In general, prosecutors are given great latitude regarding their conduct and arguments during trial. *People v. Bahoda*, 448 Mich. 261, 282; 531 N.W.2d 659 (1995). Prosecutors are also "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* (quotation marks, citation, and brackets omitted). As previously discussed, the trial court appropriately limited the evidence of the circumstances of Cheeks's murder to matters relevant to this case and such evidence did not prejudice defendant. Even if the trial court erred, the record reflects that the prosecutor had a good-faith basis for seeking the admission of the evidence, and therefore, such conduct did not constitute misconduct. *People v. Ackerman*, 257 Mich. App. 434, 448; 669 N.W.2d 818 (2003). Defendant has failed to establish that the prosecution acted in bad faith.
>
> Defendant also argues that the prosecutor improperly referenced Cheeks's murder during closing arguments. We disagree. The record reflects that the prosecutor referenced the matter to argue why the jury should believe Browne and find her trial testimony credible. "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v. Thomas*, 260 Mich. App. 450, 455; 678 N.W.2d 631 (2004). Further, "the prosecutor may argue from the facts that a witness should be

believed." *People v. Seals*, 285 Mich. App. 1, 22; 776 N.W.2d 314 (2009) (quotation marks and citation omitted). Therefore, the prosecutor did not commit misconduct.

*Edmond*, 2020 WL 2601571, at *2–3.

### a.      Eliciting Testimony Regarding Cheeks's Murder

Petitioner first takes issue with the prosecutor eliciting testimony regarding Cheeks's murder to explain why he was unavailable to testify at Petitioner's trial. Petitioner's description of the questioning as "extensive" and "repeated and prolonged questions concerning Cheeks' death, who was present, how long after George's death did it occur, [and] how Allison 'was feeling'" is nothing short of ridiculous. (ECF No. 18-13, PageID.525.) There is no record support for Petitioner's claim. Thus, there is no sense in which Petitioner has demonstrated that this testimony "so infected [his] trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

The trial court permitted the prosecution to present evidence of Cheeks's murder to explain his unavailability, but limited the testimony, precluding any evidence mentioning that Petitioner had been present when his relative murdered Cheeks. *See Edmond*, 2020 WL 2601571, at *2. Because the limited evidence regarding Cheeks was placed before the jury with the trial court's permission, the Court cannot conclude that it was prosecutorial misconduct or that it "so infected the trial with unfairness" that Petitioner was denied due process. The Michigan Court of Appeals' determinations to that effect are neither contrary to, nor an unreasonable application of clearly established federal law and, therefore, cannot support habeas relief.

### b.      Civic Duty

Petitioner also contends that the prosecutor engaged in misconduct during closing arguments by urging the jury to convict Petitioner based on their civic duty and fears. The court of appeals concluded that the prosecutor's references to Cheeks's murder and the fears it raised in

12

Allison Browne were permissible argument on the evidence as to why the jury should find Browne credible.

The state court's approach to the issue is consistent with federal law. "[A] prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented . . . ." *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019). And there is no question that the prosecutor's argument was supported by properly admitted evidence. Witness Browne testified that, at first, she declined to tell police the truth about George's murder because she was afraid. Indeed, she stopped talking to Petitioner about the incident because she was afraid that if she talked she might "be murdered next." (Trial Tr. III, ECF No. 18-8, PageID.304.)[5] Thus, the state appellate court's rejection of Petitioner's challenge to the argument was neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner's specific claim that the prosecutor essentially presented a "civic duty" argument was not addressed by the state court. The claim begs the question: what is a "civic duty" argument? There is no clearly established federal law on that point. The Supreme Court has frequently referenced jury service as a "civic duty," *see, e.g.*, *Dietz v. Bouldin*, 136 S. Ct. 1885, 1896 (2016) ("Juries are of course an integral and special part of the American system of civil justice. Our system cannot function without the dedication of citizens coming together to perform their civic duty and resolve disputes"), but the Court has never defined, or even commented on, "civic duty" arguments.

---

[5] Witness Browne testified that she experienced that particular fear during a conversation with Petitioner during March of 2017. (Trial Tr. III, ECF No. 18-8, PageID.304.) Cheeks was not murdered until April. Thus, she was not referencing being murdered "next" after Cheeks because the conversation took place before Cheeks was murdered. She could have been referring to the possibility of being murdered "next" after Thomas George.

Although the Supreme Court has not mentioned "civic duty" arguments, it has commented on the dangers of prosecutorial argument that is "wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." *Viereck v. United States*, 318 U.S. 236, 247 (1943). The prosecutor's challenged argument in *Viereck* was as follows:

> In closing, let me remind you, ladies and gentlemen, that this is war. This is war, harsh, cruel, murderous war. There are those who, right at this very moment, are plotting your death and my death; plotting our death and the death of our families because we have committed no other crime than that we do not agree with their ideas of persecution and concentration camps.

> This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as much as they are relying upon the protection of the Men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.

> As a representative of your Government I am calling upon every one of you to do your duty.

*Id.* at 247 n.3. The *Viereck* Court went on to heartily condemn that argument:

> At a time when passion and prejudice are heightened by emotions stirred by our participation in a great war, we do not doubt that these remarks addressed to the jury where highly prejudicial, and that they were offensive to the dignity and good order with which all proceedings in court should be conducted. We think that the trial judge should have stopped counsel's discourse without waiting for an objection. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 [(1935)].

*Id.* at 248. Although the *Viereck* Court's statement may be stirring, and though it could provide the foundation for a "civic duty" argument proscription, it is entirely dicta. The Court specifically

acknowledged that the "duty" argument was not the error that prompted reversal, but was simply another issue that "might well have placed the judgment of conviction in jeopardy." *Id.* at 247. This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655.

Labeling an argument a "civic duty" argument does not render that argument prosecutorial misconduct. The determination of impropriety requires going deeper; the deeper inquiry is whether the argument is irrelevant such that its only purpose would be to arouse passion and prejudice. The fact that the argument invites the jurors to satisfy a civic duty is relevant to that analysis, but it is not dispositive.

In *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991), the Sixth Circuit Court of Appeals considered exactly how the "civic duty" analysis fits within the more fundamental inquiry into whether the prosecutor has attempted to appeal to the jurors' passion or prejudice:

> Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible. *See Henderson v. United States*, 218 F.2d 14, 19–20 (6th Cir.), *cert. denied*, 349 U.S. 920 (1955).[2] Our determination of whether comments are calculated to incite prejudice and passion in the jury is informed by the Supreme Court opinion in *Viereck*.
>
> * * *
>
> The remarks in the instant case are analogous to the comments adjudged inflammatory and prejudicial in *Viereck*. The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers. The correlation between the community interest comments and the wider social-political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice. The Supreme Court in *Viereck* framed the inquiry to incorporate both the purpose and effect of the comments. In that case, in the light of contemporaneous events, which had great impact on the emotions and perceptions of jurors, the remarks "could only have . . . arouse[d] passion and prejudice." *See* [*Viereck*, 318 U.S.] at 247.

-----

[2] Our holding in *Henderson* and the result reached in *Alloway* reflect a general rule followed by other circuits as well. In *United States v. Shirley*, 435 F.2d 1076 (7th Cir. 1970), the Seventh Circuit stated that the prosecutor's closing remarks concerning the increasing number of cars being stolen did not overstep the bounds of fairness and propriety and could not have worked a substantial injury to the defendant in denying him a fair trial because, even though the statements were not particularly relevant and had no bearing on the guilt or innocence of the defendant, the remarks did not contain an emotional appeal to the jurors' self-interest designed to arouse their prejudice against the defendant. *Id.* at 1079.

The Eighth Circuit has also stated, in a case where the prosecutor told the jurors that they were the public's last shield and the district court instructed the jury to disregard the remark, that unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible. *United States v. Lewis*, 547 F.2d 1030, 1036 (8th Cir.), *cert. denied*, 429 U.S. 1111 (1976). Similarly, the Eleventh Circuit, in *United States v. Kopituk*, 690 F.2d 1289, 1342–43 (11th Cir.1982), *cert. denied*, 463 U.S. 1209 (1983), stated that appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not *per se* impermissible. However, the remarks complained of in *Kopituk* were found by the court to have approached the line demarcating impermissible comment calculated to incite the jury against the accused, but not to have crossed the line into the realm of impropriety and prejudice by directly suggesting that the jurors had personal stakes in the outcome of the case.

*Solivan*, 937 F.2d at 1151–52. The *Solivan* court went on to review several decisions where circuit courts of appeal had concluded that the argument crossed the line. For example in *United States v. Barker*, 553 F.2d 1013, 1024–25 (6th Cir. 1977), the court concluded that it was improper "for a prosecutor to suggest that unless the defendant was convicted it would be impossible to maintain 'law and order' in the jurors' community." *Solivan*, 937 F.2d at 1152. Additionally, the *Solivan* court referenced several cases where prosecutors had gone too far in suggesting that their role as jurors permitted them to do something about drug trafficking in their community. *Id.* at 1152–53.

The *Solivan* court contrasted those cases—cases where the jury was asked to look beyond the evidence against a particular defendant and consider the impact of their verdict on societal problems generally—with the decision in *United States v. Alloway*, 397 F.2d 105 (6th Cir. 1968). In *Alloway*, the court considered the propriety of the following argument:

16

> You, the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate [armed robbery]. . . .

*Alloway*, 397 F.2d at 113. The *Solivan* court explained why the "conscience of the community"

argument in *Alloway* was acceptable while similar argument in *Barker* and *Solivan* was not:

> The comments by the prosecutor in *Alloway* and the comments complained of in the instant case are only vaguely similar. The remarks in this case appear to us to have been deliberately injected into the proceedings to incite the jury against defendant. Given the nature of this case, involving a cocaine transaction, and the wider social context which the prosecutor sought to bring to bear on the proceedings, the national drug problem, the purpose and effect of the comments could have only been to arouse passion and prejudice. *See Vireck*, 318 U.S. at 247. We determined that the statements made in *Alloway* were not deliberately injected into the proceedings to inflame the jury. *See* 397 F.2d at 113. Indeed, examined in the light of the nature of the case and the wider social context in which the case was prosecuted, it is clear that the government's statements in *Alloway* were devoid of the sort of inflammatory content inherent in the prosecutor's statements in this case precisely because there was no comparable specific wider context of national attention and concern present in *Alloway* pertaining to armed robbery. The comments in *Alloway* did not attempt to compare or to associate the defendant with a feared and highly publicized group, such as drug dealers, as did the prosecutor in this case. The prosecutor in *Alloway* did not go beyond a mere allusion to the general need to convict guilty people, as did the prosecutor in this case, and bring to bear upon the jury's deliberations the attendant social consequences of defendant's criminal conduct or urge the jury to convict an individual defendant in an effort to ameliorate society's woes.

* * *

> In *Alloway*, we were presented with remarks by the prosecutor which alluded only to the general criminality of the defendant's conduct in robbing a bank and the general community need to convict guilty people. The comments at issue in *Alloway* constituted a general plea which did not even specifically refer to the crime of armed robbery. Moreover, armed robbery was not and is not the specific focus of national attention as is the drug problem. In the instant case, we find that *Alloway* is inapposite because, in this case, the prosecutor went beyond the scope of the prosecutor's statements in *Alloway*, which constituted a mere innocuous reference to the community or societal need to convict guilty people.

*Solivan*, 937 F.2d at 1154–55.[6] Neither *Solivan* nor *Alloway* are of particularly recent vintage, but more recently, the Sixth Circuit relied on the analysis in *Solivan* and described it as "one of the most cited cases in this circuit regarding attorney appeals to the community conscience . . . ." *United States v. Hall*, 979 F.3d 1107, 1122 (6th Cir. 2020).

There is no aspect of the prosecutor's argument here that invited the jurors to rely on anything other than the record evidence to reach the verdict sought by the prosecutor. There is no express or implied invitation to fulfill a civic duty by convicting Petitioner. Petitioner's civic duty argument finds no support in the record. The prosecutor referenced Browne's fears to explain why she initially lied in her statement to police and why her testimony at trial should be believed. Petitioner simply has not demonstrated that the prosecutor engaged in misconduct and made an impermissible "civic duty" argument during closing arguments.

### 2.    Ineffective Assistance of Counsel

Petitioner also faults trial counsel for not objecting to the prosecutor's closing argument that referenced the "irrelevant testimony" regarding Cheeks's murder. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the

---

[6] The *Solivan* court also noted that "[t]he district court in *Alloway* subsequently instructed the jury to base its verdict solely on the evidence and to consider the prosecutor's argument only as it corresponded with the evidence." *Solivan*, 937 F.2d at 1154. But separate and apart from the remedial instruction, the Sixth Circuit concluded that the argument was not prosecutorial misconduct because it was not, by purpose or effect, intended to inflame the passion and prejudice of the jury.

wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

The court of appeals rejected Petitioner's ineffective assistance claim, stating:

> Defendant argues that his counsel provided him ineffective assistance by failing to object to the alleged misconduct of the prosecutor. The prosecutor, however, did not commit misconduct. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010). Defendant, therefore, cannot establish that his counsel failed to provide him effective assistance.

*Edmond*, 2020 WL 2601571, at *3. That determination echoes decisions applying *Strickland*: "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

In sum, Petitioner has failed to demonstrate that the court of appeals' determinations that there was no prosecutorial misconduct and, further, that counsel was not ineffective for failing to raise a meritless objection were contrary to, or unreasonable applications of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground II.

### C.      Ground III—Sufficiency of the Evidence

As his last ground for relief, Petitioner contends that there was insufficient evidence presented during trial that he was the individual who killed Thomas George. (ECF No. 1, PageID.3.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals stated with respect to the standard of review:

> We review de novo a challenge to the sufficiency of the evidence. *People v. Bailey*, 310 Mich. App. 703, 713; 873 N.W.2d 855 (2015). When determining whether the prosecution presented sufficient evidence to support a conviction, we view the evidence "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v. Reese*, 491 Mich. 127, 139; 815 N.W.2d 85 (2012) (quotation marks and citation omitted). In *People v. Oros*, 502 Mich. 229, 239; 917 N.W.2d 559 (2018) (quotation marks, citations, alteration, and emphasis omitted), this Court explained:
>
> > the standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.

*Edmond*, 2020 WL 2601571, at *3. Although the appellate court cited state court authority for the standard, the standard applied is identical to *Jackson*. Moreover, if one looks to *Oros* and the cases cited therein in support of the standard, eventually the source of the standard is identified as *Jackson*. *See People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992). Thus, there is no question that the court of appeals applied the correct standard.

21

After stating the appropriate standard, the court of appeals faithfully followed it. The court of appeals identified the elements of first-degree premeditated murder, also noting that "[i]dentity is an essential element of every crime." *Edmond*, 2020 WL 2601571, at *4 (citing *People v. Fairey*, 928 N.W.2d 705 (2018)). The court then reviewed the record evidence in a light most favorable to the prosecution, stating:

> The determination of the credibility of witnesses and the weight of the evidence are issues for the jury, to which this Court defers. *Oros*, 502 Mich. at 239. Further, the record reflects that ample evidence supported the jury's determination of defendant's guilt beyond a reasonable doubt. Witnesses at Patton's house on the night of the murder observed defendant become angry at the victim, leave the party, and return later with a semiautomatic handgun. Patton and Browne identified defendant as the shooter. They both testified that defendant entered Patton's home with a gun and that no one else was armed. They both testified that they saw defendant and Williams restraining the victim. Patton testified that he saw defendant shoot multiple times at the victim. Browne testified that she heard the first gunshot before she ran out of the back door of Patton's home. Browne also testified that Cheeks told her that defendant shot the victim multiple times, and that defendant admitted to her that he shot the victim. Patton and Browne also testified that defendant wore a red hat during the shooting. A red hat was found at the crime scene that had defendant's DNA on it. When viewed in the light most favorable to the prosecution, the prosecution presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that defendant committed first-degree premeditated murder.

*Id.*

Petitioner does not challenge the recitation of record evidence offered by the court of appeals. Petitioner even concedes "that there was sufficient evidence to present a case of homicide to the jury." (Pet'r's Appeal Br., ECF No. 18-13, PageID.532.) The issue Petitioner focuses his entire sufficiency argument on is "identity"—was he the shooter? (*Id.*, PageID.531.) Petitioner recounts the evidence in a light that favors him and then concludes "in total, the evidence is insufficient to establish that it was [Petitioner] who committed the killing of Thomas George." (*Id.* at 535.)

Petitioner's invitation to pull together just the evidence and inferences that favor him turns the *Jackson* standard on its head. *Jackson* does not require the habeas court to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. This Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are reasonable.[7]

Here, the jury did not need to rely on attenuated inferences to support the verdict. The evidence discussed by the Michigan Court of Appeals directly identifies Petitioner as the shooter, even by his own admission to Witness Browne.  If the jurors credited that testimony regarding the identity of the shooter—and it is apparent that they did—it was sufficient to find Petitioner guilty beyond a reasonable doubt.

Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support his first-degree premeditated murder conviction is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to relief on habeas ground III.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

---

[7] In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id*. at 656.

appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment denying the petition, as well as an order denying

Petitioner's requests for counsel (ECF Nos. 19, 23) and denying a certificate of appealability.


Dated:      March 21, 2023            /s/ Robert J. Jonker
                                      Robert J. Jonker
                                      United States District Judge